Hellertown Manufacturing Company, Appellant, *v.* Commonwealth of Pennsylvania, Appellee.

Argued January 6, 1976, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Donald LaBarre, Jr.,* with him *Robert Margolis* and *Herbert L. Levy,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, for appellee.

*Harry J. Rubin,* with him *Krekstein, Rubin and Lasday,* for amicus curiae, Paris Manufacturing Company, Inc.

Opinion by Judge Kramer, June 8, 1976:
This is an appeal by the Hellertown Manufacturing Company from a resettlement order of the Board of Finance and Revenue dated November 30, 1973, which

determined Hellertown's corporate net income taxes for the tax year 1971. This case presents a narrow, but important question of first impression under the Tax Reform Code of 1971, Act of March 4, 1971, P. L. 6, *as amended,* 72 P.S. 7101 et seq. The question presented is whether the taxing authorities have abused their discretion by eliminating in the apportionment of Pennsylvania business income, sales of a foreign corporation made in states where the taxpayer is not subject to corporation taxes.[1] We hold that there was no abuse of discretion under the facts of this case.

To understand the significance of the issue presented, and our holding, we will adopt the following stipulated facts.[2] Because of the importance of the case, we will set them forth verbatim:

"1. Hellertown Manufacturing Co., Appellant herein, is a Delaware corporation registered to do business in Pennsylvania, engaged in the manufacture and sale of spark plugs and allied products. Its manufacturing plant is located in Hellertown, Pennsylvania and its administrative office is located in Toledo, Ohio.

"2. Within the time provided by law, Appellant filed its Pennsylvania Corporate Net Income Tax Report for the year 1971 which showed *inter alia*:

| | |
|---|---|
| Income to be Apportioned | $854,074.12 |
| Apportioned Percentage | .667545 |
| Income Apportioned to Pennsylvania | $570,132.91 |

---

[1] Hellertown is a Delaware corporation with all of its manufacturing facilities in Pennsylvania.

[2] Hellertown seems to view the proceedings before this Court as a simple appeal. Under Section 1104 of the Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §1104(d), appeals such as the instant case are heard *de novo.*

| | |
|---|---|
| Pa. Corporate Net Income Tax (Add Back) | $ 77,745.40 |
| Pa. Taxable Income | $647,878.31 |
| Tax at the Rate of Twelve Percent | $ 77,745.40 |

The apportionment percentage as reported by Appellant was .667545. Attached hereto, made a part hereof and marked Exhibit "A" is a copy of said Corporate Net Income Tax Report.

"3. Corporate Net Income Tax was timely settled against Appellant as follows:

| | |
|---|---|
| Income to be Apportioned | $854,074.12 |
| Apportioned Percentage | 100% |
| Income Apportioned to Pennsylvania | $854,074.12 |
| Pa. Corporate Net Income Tax (Add Back) | $ 77,745.40 |
| Pa. Taxable Income | $931,819.52 |
| Tax at the Rate of Twelve Percent | $111,818.34 |

This settlement did not reflect the use of any apportionment fraction; i.e., Appellant's income was all (100%) allocated to Pennsylvania. Attached hereto, made a part hereof and marked Exhibit "B" is a copy of said settlement.

"4. The Appellant, on April 27, 1973, timely filed with the Secretary of Revenue and the Auditor General of the Commonwealth of Pennsylvania a Petition for Resettlement of its 1971 Corporate Net Income Tax objecting to the settlement hereinabove mentioned in paragraph 3. The Appellant received a notice dated May 31, 1973 from the Resettlement Board that its Petition for Resettlement was refused. Attached hereto, and made a part hereof and labeled Exhibit "C" is a copy of said notice.

"5. On July 18, 1973, Appellant timely filed a Petition for Review with the Board of Finance and Revenue. The Board of Finance and Revenue, on

November 30, 1973, resettled and taxed Appellant as follows:

$$\text{Property fraction} = \frac{\$4,220,763}{\$4,220,763}$$

$$\text{Wage fraction} = \frac{\$3,036,614}{\$3,036,614}$$

$$\text{Sales fraction} = \frac{\$\ \ 34,661}{\$\ \ 39,053} \quad \text{x} \quad \$854,074.12 \text{ plus}$$

$$\$\ 77,745.40,$$
Penna, Corp. Net Income Tax

Tax at 12% = $107,976.24

The apportionment percentage as determined by the Board of Finance and Revenue is .962512. The sales fraction as determined by the Board of Finance and Revenue is a fraction the numerator of which is Appellant's gross receipts from sales where the property was delivered to customers located in Pennsylvania and the denominator of which is Appellant's total gross receipts from sales where the property was delivered to customers located in Pennsylvania or Ohio. Eliminated from the denominator of the sales fraction are Appellant's gross receipts from sales to customers located in states other than Ohio and Pennsylvania (so-called "throw-out" rule; i.e., this rule eliminates from the denominator of the sales factor, all destination sales to those States in which the taxpayer does not transact business nor is subject to specific corporation taxes, or in which destination the State does not have the requisite jurisdiction to impose a net income tax regardless of whether, in fact, such State does or does not). A true and correct copy of the Board of Finance and Revenue's order is attached hereto, and made part hereof and marked Exhibit "D".

"6. On December 26, 1973, the Appellant timely filed an Appeal and Specification of Objections in the Office of the Prothonotary of the Commonwealth Court with respect to its 1971 Corporate Net Income Tax liability. Appellant also timely filed in the Office of the Prothonotary of the Commonwealth Court the appropriate Appeal Bond. By letter dated December 31, 1973 the Department of Justice was notified of this Appeal.

"7. Appellant was incorporated under the laws of Delaware on December 22, 1950 and started business in the Commonwealth of Pennsylvania on January 2, 1951. It is a wholly-owned subsidiary of Champion Spark Plug Company, hereinafter referred to as Champion, a Delaware corporation which is also qualified to do business in Pennsylvania. Champion is engaged in world-wide operations primarily connected with the research, development, manufacture and sale of spark plugs.

"8. Appellant maintains at its plant in Hellertown, Pennsylvania, accounting books and records pertaining to among other items, cash, sales, purchases, accounts receivable, accounts payable, payroll and fixed assets. These books and records are separate from the books and records of Champion. Appellant maintains bank accounts at the Saucon Valley Trust Company, Hellertown, Pennsylvania and at the Morgan Guarantee Trust Company, New York, New York. Appellant's stock certificate and minute books are kept and maintained at the offices as described below in Toledo, Ohio.

"9. The officers of Champion are:

| | |
|---|---|
| President | R. A. Stranahan, Jr. |
| Vice-President | R. E. Surface |
| Vice-President & Treasurer | R. J. Brotje, Jr. |
| Secretary | R. H. Crook, Jr. |
| Controller | T. L. Emrick |

"10. The officers of Appellant are:

| | |
|---|---|
| President | R. A. Stranahan Jr. |
| Vice-President | R. E. Surface |
| Vice-President & Treasurer | R. J. Brotje, Jr. |
| Secretary | R. H. Crook, Jr. |
| Assistant Secretary | L. H. Best |

All of these officers with the exception of L. H. Best reside in the vicinity of Toledo, Ohio. L. H. Best resides in Hellertown, Pennsylvania.

"11. Champion owns an office building at 900 Upton Avenue, Toledo 1, Ohio. The officers of Appellant with the exception of L. H. Best have their business offices at this location, and Appellant's name appears on the entrance door of this building. Appellant's officers, when conducting Appellant's business, use stationary with Hellertown letterhead requesting that replies be addressed to the Toledo office. Employees of Champion located at the Toledo office supply Appellant with administrative, research, engineering, and factory management services. This staff provides Appellant with engineering and research on all new spark plug designs, applications and materials. New machinery is designed in Toledo, ordered by the officers of Appellant located in Toledo, and forwarded to the Hellertown plant. The Toledo staff supplies Appellant with drawings and blueprints, sets inspection standards and tooling, and provides time study standards. They set material shipment standards and write specifications for production of Appellant's products.

"12. With the aid of Champion's employees as described above, the officers of Appellant located in Toledo determine all employment policies of Appellant including salaries, fringe benefits, vacation and sick leaves. All labor negotiations are directed and controlled by these officers. They establish the budget of Appellant, provide all capital expenditures, and

set all purchase and sales policies. Credit reports for Dun & Bradstreet and other interested concerns are prepared in the Toledo office and approved by Appellant's officers located there. All governmental reports, including federal and state tax returns, are approved and signed by Appellant's officers located at the Toledo office and all Federal Trade Commission and ICC matters are handled by that office. All Appellant's stockholders and directors meetings are held in the Toledo office.

"13. The officers of Appellant located in Toledo have complete charge and authority over all financial matters. With the exception of amounts under $1,500.00, all checks must be signed by officers located in Toledo. All insurance negotiations and contracts are handled by these officers and all decisions relating to legal and accounting problems are made by the officers located in Toledo. All public and press releases come from Appellant's officers in Toledo. Appellant's officers located in Toledo determine production schedules and expansion policies as well as Appellant's plant security for standards and enforcement policies.

"14. Pursuant to an oral arrangement between Appellant and Champion, Appellant paid Champion fees for the management, research, and other services rendered to Appellant by Champion's employees as well as for the maintenance of Appellant's office in Toledo. The management fee paid by Appellant to Champion was $1,185,195.25 for the calendar year 1971.

"15. The above-mentioned fees are accrued and paid monthly and represent 15% of the cost of sales, that is 15% of the cost of direct labor and materials entering into products produced by Appellant.

"16. Of Appellant's officers, only L. H. Best lives and works in Pennsylvania. Mr. Best resides in

Hellertown and is general manager of Appellant's plant. His duties primarily concern plant supervision. Based on the production schedules set by Appellant's officers located in Toledo, Mr. Best orders raw materials and supplies and does all other things necessary to accomplish the day to day plant operations.

"17. Mr. Best has authority to sign checks limited to amounts not exceeding $1,500.00. He has authority to make capital expenditures up to $1,000.00. Neither Mr. Best nor anyone else employed by Appellant in Pennsylvania has authority to negotiate, effect, or in any manner make sales of the products produced by Appellant. Mr. Best does have authority to make sales of Appellant's scrap.

"18. All Appellant's sales of spark plugs are to Champion. Appellant bills Champion by weekly invoices based on prices set by Appellant's officers [in] Toledo. The weekly invoices are prepared by Appellant's employees located in Hellertown who are informed of the prices set by the memorandum letter from Appellant's officers in Toledo. These invoices are paid by Champion through checks drawn on its bank account.

"19. All shipping instructions for Appellant's products come via teletype from the Toledo offices. These instructions state the name of Champion's purchaser, how many spark plugs are ordered, the type of spark plug ordered, by what carrier shipment is to be made, and the date shipment is to be made. Based on these instructions, Appellant's employees located at the plant make shipping arrangements.

"20. Appellant's 1971 sales of tangible personal property consisted of the following:

(a) Sale of miscellaneous items and scrap produced during the manufacture of spark plugs, which scrap sales delivered to Pennsylvania customers and

miscellaneous Pennsylvania sales amounted to $34,-661.00.

(b) Sales of finished spark plugs to Champion, Toledo, Ohio, which spark plugs were all shipped to Champion's customers located in Ohio and amounted to $4,392.00.

(c) Sales of finished spark plugs to Champion, Toledo, Ohio, which spark plugs were all shipped to Champion's customers located in states other than Pennsylvania and Ohio and amounted to $13,082,-524.00.

(d) Miscellaneous sales of component items to related companies located outside of Pennsylvania and Ohio which sales amounted to $35,435.00.

"21. In addition to the Pennsylvania Corporate Taxes for the calendar year 1971, Appellant was required to file and did file a Corporate Franchise Tax Report with the State of Ohio. The 1971 Ohio Franchise Tax Report indicated the minimum tax liability of $50.00; even though, if the tax was computed in accordance with the Ohio Franchise Tax Statute, the amount of the tax would have been approximately $10.00 because during the year in question the Appellant did not report any tangible property in Ohio, did not assign any wages or salaries to Ohio and only had minimal sales to customers located in Ohio. Appellant also pays a franchise tax to the State of Delaware; however, this tax is not based on any corporate activity in that state, but is a privilege tax on incorporation in Delaware. With the exception of Ohio, Delaware and Pennsylvania, Appellant was not subject and did not pay corporate taxes to any other state.

"22. As of December 31, 1971, Champion had the following domestic subsidiaries:

| Name | Manufacturing and/or Principal Business Location |
|---|---|
| 1. Hellertown Manufacturing Co. | Hellertown, Pennsylvania |
| 2. Iowa Industries, Inc. | Burlington, Iowa |
| 3. Magnaflux Corporation | Chicago, Illinois |
| 4. Baron Drawn Steel Corporation | Toledo, Ohio |
| 5. P B Marketing, Inc. | Toledo, Ohio |
| 6. Bender Electronics Corporation | Angola, Indiana |
| 7. Champion Spark Plug Co. (Japan) Ltd. | Toledo, Ohio |

During the calendar year 1971, Champion received from the above subsidiaries and from foreign subsidiaries management fees in the amount of $5,706,-646.00. These fees represent remuneration received by Champion for management services rendered to its subsidiaries. The management services rendered by Champion to all of its subsidiaries are similar to those services rendered to Appellant.

"23. In addition to the management operations of its subsidiaries, Champion performs manufacturing operations itself. Champion has manufacturing plants located in the following states: Ohio, Michigan and Pennsylvania Champion's sales in 1971 to customers located in Ohio were $11,822,533.00."

After the filing of the above stipulation, Hellertown sought to modify the record by the addition of a report by the Speaker's [Speaker of the Pennsylvania House of Representatives] Committee On Tax Reform, dated November 27, 1970. The Commonwealth has objected to the inclusion of this report in the record. Hellertown's purpose in offering the report is to present evidence of the intent of the Committee and its staff of experts in making recommendations in favor of the passage of most of the provisions of the Tax Reform Code proposal. In view of the facts (1) that the Commonwealth has objected to the submission of this report; (2) that there is no proof that all of the recommendations in the ex-

haustive report were eventually adopted by the Legislature and included in the Tax Reform Code of 1971; and (3) that Hellertown does not contend that any provision in the Code is ambiguous,[3] we will not consider the report, and it will not be made a part of the record.

We also note that, in any event, the Speaker's Committee specifically considered the "throw back" rule, and not the "throw out" rule involved in this case. Although it is recognized that the result of the use of either rule *may* be the same, there is a difference, as will be described below.

The Tax Reform Code of 1971 was intended to clarify the tax laws of the Commonwealth. Article IV of the Code specifically sets forth the corporate net income tax (CNI), which is a tax imposed on all corporations foreign and domestic "doing business in this Commonwealth or having capital or property employed or used in this Commonwealth." *See* 72 P.S. §7401 et seq. The base for the CNI tax is income "returned to and ascertained by the Federal Government." If a corporation transacts all of its business in Pennsylvania, the Commonwealth may constitutionally tax all of its income. Since the CNI tax is an excise tax on the privilege of earning income, the Commonwealth can constitutionally only subject to tax that part of the income which is reasonably related to the franchise or the privilege exercised in Pennsylvania. The CNI tax is intended to tax only a reasonable portion of the corporation's income in Pennsylvania when part of the corpora-

---

[3] While it is true that the Supreme Court has commented favorably on the use of legislative reports as an aid to statutory construction, such comment has been limited to instances where the statute in question was ambiguous. *See Martin Estate*, 365 Pa. 280, 74 A.2d 120 (1950).

tion's income arises from transactions of business outside of Pennsylvania.

In order to arrive at a reasonable tax, the Code sets forth certain allocations and apportionment fractions which, when reduced to a decimal equivalent and applied to the base of the tax, i.e., the income as ascertained and returned to the Federal Government, result in a proper constitutional tax base. The apportionment formula is set forth in subsection three of Article IV of the Code, in the definition of taxable income, which provides:

"(3) 'Taxable income.'

1. In case the entire business of the corporation is transacted within this Commonwealth, for any taxable year which begins on or after January 1, 1971, taxable income for the calendar year or fiscal year as returned to and ascertained by the Federal Government. . . .

"2. In case the entire business of any corporation . . . is not transacted within this Commonwealth, the tax imposed by this article shall be based upon such portion of the taxable income of such corporation . . . and may be determined as follows:

"(a) Division of Income.

. . . .

"(3) For purposes of allocation and apportionment of income under this definition, a taxpayer is taxable in another state *if in that state he is subject to a net income tax,* a franchise tax measured by net income, a franchise tax for the privilege of doing business, or a corporate stock tax, *or that state has jurisdiction to subject the taxpayer to a* net income *tax* regardless of whether, in fact, the state does or does not.

. . . .

"(9) All business income shall be apportioned to this State by multiplying the income by a fraction, the

numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three.

. . . .

"(15) The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this State during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period.

. . . .

"(18) *If the allocation and apportionment provisions of this definition do not fairly represent the extent of the taxpayer's business activity in this State,* the taxpayer may petition the Secretary of Revenue or *the Secretary of Revenue may require,* in respect to all or any part of the taxpayer's business activity:

"(A)   Separate accounting;

"(B)   The exclusion of anyone or more of the factors;

"(C)   The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this State; or

"(D)   *The employment of any other method to effectuate equitable allocation and apportionment of the taxpayer's income.''* (Emphasis added.)

Subsection (18) was not contained in the prior act and the reported cases dealing with the prior version are not necessarily relevant to this case. *See Commonwealth v. Reick Investment Corporation,* 34 Pa. D. & C. 2d 492, *aff'd,* 419 Pa. 52, 213 A.2d 277 (1965). With this thought in mind, this Court, in *Greenville Steel Car Company v. Commonwealth,* 20 Pa. Commonwealth Ct. 385, 392, 343 A.2d 79, 83 (1975), stated:

"As our prior discussion has indicated, the Code [Tax Reform Code] has cured taxing inequity recognized in Reick.   Apportionment and allocation for

determining a foreign corporation's taxable base for its franchise tax as well as corporate net income tax are now governed by the *same* formulas and conditions precedent to their utilization under Article IV of the Code. The express language of the Code now requires that a foreign corporation be transacting business within and without the Commonwealth and have income from that activity taxable by another State before it may apportion the value of its taxable stock." (Emphasis in original.)

The instant case is similar to *Kennecott Copper Corporation v. State Tax Commission,* 27 Utah 2d 119, 493 P. 2d 632 (1972), *appeal dismissed,* 409 U.S. 973, *rehearing denied,* 409 U.S. 1093 (1972), where the State Tax Commission of Utah, using that state's equivalent of subsection (18) quoted above, revised the taxpayer's sales factor. The taxpayer's franchise tax return for 1967 showed a property factor of 42.46 percent, a payroll factor of 42.88 percent, and a sales factor of 0.831 percent. For the purpose of computing its depletion allowance, Kennecott reported gross receipts for sales by its Utah division in the amount of approximately $158,000,000. The State Tax Commission revised the sales factor after concluding that Kennecott's returns did not fairly reflect the extent of its Utah business activity. In affirming the State Tax Commission, the Supreme Court of Utah said: "Kennecott contends that the decision of the Tax Commission violates the provisions of the commerce clause (Article I, Sec. 8, Cl. 3) and the Fourteenth Amendment to the United States Constitution. The Utah act we are here dealing with does not seek to impose a tax upon income or business done outside the State of Utah. The Act only seeks to impose a tax upon that portion of Kennecott's income which is derived from its business activity in this State. We are of the opinion that the statute and the decision of

the Commission do not infringe the constitutional rights of Kennecott." 27 Utah 2d at 124-25, 493 P. 2d at 636. As will be noted, the factors involved in this case are more disproportionate than were the factors involved in *Kennecott*. *See also Covington Fabrics Corporation v. South Carolina Tax Commission*, 264 S.C. 59, 212 SE 2d 574 (1975), *appeal dismissed*, 44 U.S. L.W. 3198 (U.S. October 6, 1975).

From the original 1935 enactment of the CNI and franchise taxes, where the 3-factor apportionment formula first appeared, Pennsylvania had always used a formula designed to apportion outside of Pennsylvania, only receipts which could be attributed to activity emanating from a sales office located outside of Pennsylvania. Otherwise all receipts were apportionable to Pennsylvania. In 1971, with the Tax Reform Code, Pennsylvania changed its policy by the use of a destination basis as a more significant and a fairer method for apportioning Pennsylvania's share of sales receipts. There can be little doubt that there was an intent to change the method by which sales receipts were "thrown back" to Pennsylvania. Without subsection (18) the new Code requires all sales to be apportioned directly to the state where the customer is located with no "throw back" of any sales to Pennsylvania. However, the Legislature, recognizing that unusual situations and unfair tax treatment could result from a strict application of the elimination of the "throw back" method, gave the taxing authorities the discretion to employ "any other method to effectuate an equitable allocation and apportionment of the taxpayer's income". The Commonwealth in this case has used subsection (18) as the basis for "throwing out" the sales of Hellertown which were made in states where Hellertown does not pay corporate taxes. Hellertown contends that this was an abuse of discretion and that if we affirm the Board of Finance and Reve-

nue in this case, any time the resulting percentage in any of three factors of the formula is out of line with the remaining percentage factors the taxing authority can eliminate the strict application of the statutory formula, in derogation of the intention of the Legislature.

We note that subsection (18) is only operative when the statutory formula does not yield an apportionment which "fairly represents" the extent of the taxpayer's business activity in Pennsylvania. It is clear to us that whether the Commonwealth has properly used subsection (18) to change a numerator or denominator of the statutory fraction is a question which will have to be decided on a case-by-case basis. The only general rule which can be formulated is that to justify the use of subsection (18) the taxing authorities must be faced with unusual circumstances in which a strict application of the statutory formula will produce an unrealistic and inequitable result.

The fact that 100 percent of Hellertown's property and wages are attributable to Pennsylvania activities, while 88 percent of Hellertown's sales are made in foreign states where Hellertown is not subject to any business tax, represents such unusual circumstances. Hellertown did not pay taxes to any other state except Ohio, and an allowance was made for these.

Hellertown contends that the Commonwealth's approach is unfair, because the use by the Secretary of Revenue of the "throw-out" rule in this case effectively distorts the legislative purpose in removing the "throw back" rule from the sales factor as found in the Tax Reform Code of 1971. Hellertown argues that this will increase its tax solely because it sells its products in foreign places where Hellertown is not taxed. But to place the matter in juxtaposition, if Hellertown is permitted to reduce its tax by about one-third through an avoidance of subsection (18), other

corporations in Pennsylvania will be unfairly taxed because most or all of their sales are made in Pennsylvania. Hellertown seems to argue that its sales experience is not so exceptional as to permit the Secretary of Revenue to use subsection (18). It seems to us just as logical to presume that the general rule is that Pennsylvania manufacturers will sell their products in Pennsylvania and that the exception is a Pennsylvania manufacturer which sells almost all of its products in foreign places.

Hellertown has assumed that the burden was on the Commonwealth to prove that the use of the "throw out" rule and the resettlement were proper. This assumption is wrong. Because the statute grants to the Secretary of Revenue discretion in this area, the burden was upon Hellertown to prove that its sales experience for the tax year was not exceptional and that the Secretary's employment of another method to effectuate an equitable allocation and apportionment of the taxpayer's income was an abuse of discretion. Hellertown failed to meet this burden.

In summary, we hold that where a foreign corporation manufactures all of its products in Pennsylvania, has all of its tangible property in Pennsylvania, has all of its employes in Pennsylvania, pays only a minimum privilege tax to one other state, and is not subject to the taxing jurisdiction of any other state, and files a CNI tax return showing all of its sales in all states and foreign countries in the denominator of the sales fraction of the three-part formula, upon resettlement the Secretary of Revenue may "throw out" all sales in foreign jurisdictions where such taxpayer is not subject to any corporate tax and reduce the denominator in the sales fraction accordingly. We conclude that the taxing authorities in this case did not abuse their discretion or commit an error of law, and we therefore

108

## ORDER

AND Now, this 8th day of June, 1976, the order of the Board of Finance and Revenue in the above-captioned matter, dated November 30, 1973, is affirmed and judgment is entered for the Commonwealth of Pennsylvania and against the Hellertown Manufacturing Company in the amount of $107,976.24, representing the tax liability of the Hellertown Manufacturing Company for corporate net income taxes for the taxable year 1971; and it is further ordered that if no exceptions to this order are filed within 20 days of the date hereof, this order shall become final.

Judge ROGERS dissents.