Paris Manufacturing Company, Inc., Appellant *v.* Commonwealth of Pennsylvania, Appellee.

Doe Spun, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued December 15, 1981, before President Judge CRUMLISH, JR. and Judges MENCER, ROGERS, WILLIAMS, JR. and CRAIG.

*Harry J. Rubin, Krekstein, Rubin* and *Lasday,* for petitioners.

*Eugene J. Anastasio,* with him *Michael A. Roman,* Deputy Attorneys General, for respondent.

OPINION BY JUDGE ROGERS, March 5, 1982:

In these consolidated cases, Paris Manufacturing Company, Inc. and Doe Spun, Inc., corporations doing business in this Commonwealth as well as in foreign jurisdictions, have appealed from resettlement orders of the Board of Finance and Revenue which, as to each appellant, increased the amount of corporate net income tax due the Commonwealth on the basis of a determination that the method employed by the appellants to allocate and apportion their business income between this and the other jurisdictions in which they conduct business did not "fairly represent the extent of the taxpayer's business activity in this State..." within the meaning of Article IV of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, 72 P.S. §7401 (3)2(a)(18) and, therefore, that the Board was authorized to recalculate the proportion of income tax-

able in the Commonwealth by disregarding untaxed sales in other states.

On the basis of stipulations submitted by the parties we find the following facts to have been established:

Paris Manufacturing Company manufactures specialized garment finishing equipment at its plant in Brockway, Pennsylvania. The company has no other manufacturing facilities. Executive offices are maintained and some sales activity takes place in Cambridge, Massachusetts where the company's president is located.

During the tax year at issue, 1971, virtually all of the company's tangible property and approximately ninety per cent of its wages and salary were attributable to its Pennsylvania operations. Only about 7.4% of the company's sales took place in Pennsylvania and only about 14.7% of the company's sales were destined to the two states (Pennsylvania and Massachusetts) where the company is subject to a corporate income tax. On the basis of these characteristics of its multi-state operations and as is authorized by the Tax Reform Code, Paris Manufacturing Company calculated the proportion of its income subject to Pennsylvania tax (the apportionment percentage) by averaging the Pennsylvania Proportions of its tangible property (100%), wages and salaries (89.69%) and sales (7.4%) thereby concluding that 65.6972% of its income was taxable by the Commonwealth.

Following a Petition for Resettlement to the Department of Revenue and a Petition for Review to the Board of Finance and Revenue, the Board recalculated the company's apportionment percentage as 92.6449% by eliminating from consideration in the sales component denominator gross receipts from sales destined to states where the company was not subject to a corporate income tax. This procedure is commonly

known and has been referred to by the parties as the "throw out" rule.[1] The result is an increase in the company's tax liability from $2,643.00 to $3,585.29.

Doe Spun, Inc. is a Delaware Corporation authorized to do business in Pennsylvania and engaged in the design, manufacture, and sale of children's clothing. In connection with those activities, Doe Spun maintains manufacturing facilities and retail sales outlets in Pennsylvania and Maryland, office facilities in Pennsylvania and New York City, and a showroom in New York City. Direct sales activities are conducted by eighteen commissioned salesmen assigned to specified territories encompassing all fifty states and the District of Columbia. All customers' orders are initially processed at Doe Spun's New York City offices.

During the tax year at issue, 1975, Doe Spun calculated its Pennsylvania apportionment percentage as the average of the Pennsylvania Proportions of its tangible property (83.7%), wages and salary (71.7%) and sales (6.9%) thereby concluding that 53.8714% of its income was subject to Pennsylvania's Corporate Net Income Tax. Thereafter, the Department of Revenue resettled Doe Spun's tax liability by employing the throw out rule and eliminating from consideration in the sales component of the apportionment percentage gross receipts from sales destined to states where Doe

---

[1] This rule is to be distinguished from the "throw back" rule, not a part of the Tax Reform Code of 1971, which mandates the inclusion of untaxed sales in the sales component numerator. The throw back rule is included in the Uniform Division of Income for Tax Purposes Act from which the Tax Reform Code of 1971 was largely derived. Appellants seem to argue that the Board has here undermined the clear legislative intent not to incorporate an automatic throw back rule in the Tax Reform Code by the use, under unusual circumstances, of the throw out rule. This contention was considered at length and rejected in *Hellertown Manufacturing Company v. Commonwealth,* 480 Pa. 358, 365, 390 A.2d 732, 735 (1978).

Spun was not subject to a corporate income tax. This recalculation resulted in an increase in the proportion of Doe Spun's business income subject to Pennsylvania tax to 67.2908% and a corresponding increase in tax liability from $46,052.00 to $56,798.95.

## DISCUSSION

The only issue for our review is whether the Board has properly employed the throw out rule in these cases. In this regard the Board relies on Article IV of the Tax Reform Code, subsection (18), above cited, which provides in full:

> If the allocation and apportionment provisions of this definition do not fairly represent the extent of the taxpayer's business activity in this State, the taxpayer may petition the Secretary of Revenue or the Secretary of Revenue may require, in respect to all or any part of the taxpayer's business activity:
>
> (A) Separate accounting;
>
> (B) The exclusion of any one or more of the factors;
>
> (C) The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this State; or
>
> (D) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

72 P.S. §7401(3)2(a)(18), and on *Hellertown Manufacturing Company v. Commonwealth*, 25 Pa. Commonwealth Ct. 90, 358 A.2d 424 (1976) *aff'd* 480 Pa. 358, 390 A.2d 732 (1978) where it was held that subsection (18) and particularly subpart (D) above quoted empowers the Secretary in those cases where the extent of the corporate taxpayer's Pennsylvania business activities are not otherwise fairly represented, to employ the throw out rule.

The Board asserts that its general practice, followed in these cases, is to examine the return of each corporate taxpayer to determine, first, whether the sales component of the apportionment percentage is disproportionate to the property or payroll components, and second, whether the excluded sales are of tangible personal property destined to purchasers in states where the taxpayer is not subject to tax and, finally, whether the exclusion from consideration in the sales component of the untaxed sales would result in an increase in tax liability of ten per cent or more.[2] This analysis, the Board contends, is sufficient to

---

[2] This procedure is now contained in a regulation found at 61 Pa. Code §153.43 which provides:

(a) *General.* If the apportionment provisions do not fairly represent the extent of the taxpayer's business activity in this Commonwealth, TRC 401(3)2(a)(18) may be utilized on a case-to-case basis to effectuate an equitable apportionment by any of the methods provided therein.

(b) *Exclusions: "Throw Out Rule."* An exclusion of sales from the Sales Factor may be effected in those cases wherein the statutory Sales Factor percentage is deemed by the Department to be disproportionate to the Property Factor or Payroll Factor percentages, or both, and the excluded sales are sales of tangible personal property delivered or shipped to a purchaser in a state or states wherein the taxpayer conducts no business activity which is taxable in such state or states. This exclusionary rule is commonly referred to as the "throw-out rule." Ref: 'TRC 401(3)2(a)(18). This exclusionary throw out rule is expressed by the exclusion from the denominator of the Sales Factor of those sales of tangible personal property delivered or shipped to a purchaser in a State:

(1) wherein the taxpayer is not subject to a net income tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business, or a corporate stock tax; or

(2) which does not have jurisdiction to subject the taxpayer to a net income tax. Ref: TRC 401(3)2(a)(2) and (3)

disclose whether the usual method of apportionment fairly represents the taxpayer's business activities in Pennsylvania and discloses in the instant cases that Paris Manufacturing Company's and Doe Spun's business activities are not fairly represented by a calculation, like that employed by the taxpayers, which includes untaxed out-of-state sales in gross sales receipts.

The appellants emphasize that portion of our opinion in *Hellertown* where we wrote:

> We note that subsection (18) is only operative when the statutory formula does not yield an apportionment which 'fairly represents' the extent of the taxpayer's business activity in Pennsylvania. It is clear to us that whether the Commonwealth has properly used subsection (18) to change a numerator or denominator of the statutory fraction is a question which will have to be decided on a case-by-case basis. The only general rule which can be formulated is that to justify the use of subsection (18) the taxing authorities must be faced with unusual circumstances in which a strict application of the statutory formula will produce an unrealistic and inequitable result.

*Id.* at 106, 358 A.2d at 432, contending that the Secretary's decision to employ the throw out rule as to them was impermissibly based on rules of general application and was not predicated on any evidence of relevant unusual circumstances or that the apportionment percentage used by each of the appellants did not fairly represent their business activity in Pennsylvania. Therefore, it is argued, subsection (18) is inapplicable and the Secretary was without authority to recalculate the tax liability by means of the throw out rule.

We first reject the appellants' contention that the requirement that the decision whether to employ the throw out rule be made on a case-by-case basis implies that the taxing authorities are forbidden to utilize in the decision-making process rules of general application. The general rules here employed do no more than focus the inquiry to which each corporate taxpayer is individually subjected. Moreover, the use of such terms as "disproportionate" to describe the sought for relationship between the sales component and the property or payroll components ensures that the detailed particulars of each taxpayer's activities will be examined and that the decision maker will then have some flexibility in his determination.

The appellants further argue that the Board's final analytic step, involving a determination of whether the use of the throw out rule will increase tax liability by ten percent or more, proves that the whole of the Board's analysis is mechanistic and insensitive to the proper object of the inquiry; the extent of the taxpayer's business activities in Pennsylvania. We disagree. There is no impropriety, it seems to us, in the Board's decision to determine on the basis of several specified criteria whether a taxpayer may be subject to the throw out rule and then to determine on the basis of a calculation as to the increase in taxes thereby resulting whether it is worth the time and effort to pursue the procedures necessary to effect a resettlement of the taxpayer's return.

We must also reject the appellants' attempt to distinguish *Hellertown* on its facts and to argue that in these cases, unlike *Hellertown*, there is no evidence that the appellants' Pennsylvania activities were not fairly represented by an apportionment percentage calculated without application of the throw out rule. Specifically, the appellants contend that *Hellertown* involved certain inter-corporate dealings not here pres-

ent. However, it is clear that neither our decision nor that of the Supreme Court rested on the presence of those dealings. On the contrary we summarized the pivotal factual particulars in *Hellertown* as follows:

> The fact that 100 per cent of Hellertown's property and wages are attributable to Pennsylvania activities, while 88 per cent of Hellertown's sales are made in foreign states where Hellertown is not subject to any business tax, represents such unusual circumstances [sufficient to justify use of the throw out rule].

*Id.* 25 Pa. Commonwealth Ct. at 106, 358 A.2d at 432. In the cases *sub judice* 100 per cent of Paris Manufacturing Company's property and 90 per cent of its wages and salaries are attributable to Pennsylvania, while 85 per cent of its sales were destined to states where Paris is not subject to tax. Eighty-three per cent of Doe Spun's property and 72 per cent of its payroll are attributable to Pennsylvania while 78 per cent of its sales were destined to states where Doe Spun is not subject to tax. It is apparent that the facts of these cases are very like those in *Hellertown*; certainly they are not so different that this Court could substitute its discretion for that of the taxing authorities.

Finally, it is clear from the Supreme Court's decision in *Hellertown* that the invocation of subsection (18) and the use of the throw out rule are appropriate in those cases where the corporate taxpayer has structured itself so that a preponderance of its operations other than sales take place in Pennsylvania while most of its sales occur in states other than Pennsylvania where the taxpayer is not subject to tax. The "unfairness" thereby redressed lies in the taxpayer's successful apportionment of a large part of its business activities to states which lack sufficient minimum connections with the taxpayer to establish a jurisdictional

basis for purposes of taxation. This rationale is as applicable in these cases as it was in *Hellertown*.

Orders affirmed.

## ORDER IN 156 C.D. 1974

AND Now, this 5th day of March, 1982, the order of the Board of Finance and Revenue in the above-captioned matter is affirmed and judgment is entered for the Commonwealth and against Paris Manufacturing Company, Inc. in the amount of $3,585.29 representing the tax liability of Paris Manufacturing Company, Inc. for corporate net income taxes for the taxable year 1971.

For provisions concerning exceptions see Pa. R.A.P. 1571(i).

## ORDER IN 593 C.D. 1979

AND Now, this 5th day of March, 1982, the order of the Board of Finance and Revenue in the above-captioned matter is affirmed and judgment is entered for the Commonwealth of Pennsylvania and against Doe Spun, Inc. in the amount of $56,798.95 representing the tax liability of Doe Spun, Inc. for corporate net income taxes for the taxable year 1975.

For provisions concerning exceptions see Pa. R.A.P. 1571(i).

Judge Palladino did not participate in the decision in this case.