476 A.2d 890

PARIS MANUFACTURING COMPANY, INC., Appellant,

v.

COMMONWEALTH of Pennsylvania, Appellee.

DOE SPUN, INC., Appellant,

v.

COMMONWEALTH of Pennsylvania, Appellee.

Supreme Court of Pennsylvania.

Reargued Jan. 24, 1984.

Decided April 23, 1984.

16

Harry J. Rubin, Harrisburg, for appellants.

Eugene J. Anastasio, Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

### OPINION OF THE COURT

FLAHERTY, Justice.

These are consolidated appeals from orders of the Commonwealth Court which affirmed[1] resettlement orders of the Board of Finance and Revenue that increased the amounts of corporate income tax due the Commonwealth from the appellants, Paris Manufacturing Company and Doe Spun, Inc., each of which is a corporation engaged in business in this Commonwealth as well as in foreign jurisdictions. The tax increases arose pursuant to determinations by the Department of Revenue that appellants' apportionments of business incomes between this and other juris-

1. *Paris Manufacturing Co. v. Commonwealth,* 65 Pa.Commw. 164, 441 A.2d 1368 (1982).

dictions understated incomes taxable by this Commonwealth.

Based upon stipulations submitted by the parties, the following factual background has been established. Paris Manufacturing Company, a producer of garment finishing equipment, is incorporated in this Commonwealth and maintains just one manufacturing facility, that plant being situated in Brockway, Pennsylvania. Executive offices, including those of the company's president, are located in Cambridge, Massachusetts, and from those offices emanate all activities affecting sales of equipment manufactured in Pennsylvania. Sales efforts are comprised of advertisements in trade journals, trade show exhibitions in New Jersey and Illinois, and the services of three salesmen retained through an affiliated corporation, over which Paris Manufacturing Company's president in Cambridge also presides, who solicit orders nationwide. All orders received are subject to approval at the offices in Cambridge. During the tax year in question, ending December 31, 1971, sales were made to customers in forty-three states, the District of Columbia, and several foreign countries.

The other appellant, Doe Spun, Inc., is incorporated in Delaware and engages in the design, manufacture, and sale of children's clothing. It maintains manufacturing facilities and several factory-outlet retail stores in Pennsylvania and Maryland, office facilities in Pennsylvania and New York, and a large showroom in New York City. During the tax year in question, ending April 30, 1975, sales were made to customers in each of the fifty states and in the District of Columbia, such sales having been procured through eighteen salesmen, each stationed in his own territory. Supervision of the salesmen's activities, as well as initial processing of the orders they procure, occurs in New York City. Certain customers having long-established relationships with Doe Spun, Inc. deal directly with sales executives at the showroom-office in New York City rather than through regional salesmen. The showroom is utilized for meetings with customers' buyers, and contains exhibits of the compa-

ny's entire product line. Sales promotions are also directed from that location, and include trade show exhibitions conducted throughout the country and advertisements in national trade publications. In addition, all of the company's designers and fashion coordinators are located in New York City, due to the fact that their functions are integrated with sales efforts.

Clearly, therefore, the appellant corporations engage in business activities both inside and outside of Pennsylvania, rendering it necessary to determine, through apportionment, the amount of income subject to taxation by this Commonwealth. The Tax Reform Code of 1971 provides for this amount to be determined by multiplying a corporation's total net income by an apportionment figure calculated for each tax period as the average of three statutory fractions: 1.) the property fraction (value of real and tangible personal property owned or rented in Pennsylvania ÷ value of all such property of the taxpayer everywhere); 2.) the payroll fraction (compensation paid in Pennsylvania ÷ total compensation paid by the taxpayer everywhere); and 3.) the sales fraction (sales in Pennsylvania ÷ total sales by the taxpayer everywhere). 72 P.S. § 7401(3)2(a)(9), (10), (13), (15) (Supp.1983). Calculated in this manner for each of the appellants, the three fractions, and the related apportionment figures, are as follows.

| | Property | Payroll | Sales | Apportionment |
|---|---|---|---|---|
| Paris Manufacturing Co. | .9554 | .8969 | .1362 | .6628 |
| Doe Spun, Inc. | .8443 | .7165 | .1001 | .5536 |

Relying upon statutory authority to adjust, under specified circumstances, apportionment figures yielded by the statutory formulas, the Board of Finance and Revenue rejected the sales and apportionment figures set forth above. The Board, invoking what is commonly known as its "throw out" rule, revised upwards the sales fractions by "throwing out" of their denominators all sales made in states where appellants were not subject to payment of income taxes. This resulted in the exclusion of approxi-

mately 85% of the sales of Paris Manufacturing Company and 78% of the sales of Doe Spun, Inc., since the former pays taxes in only Pennsylvania and Massachusetts while the latter is taxed in just Pennsylvania, Maryland, and New York. The consequent increases in the sales fractions, to .9273 and .4580 respectively, and, hence, in the apportionment figures, to .9265 and .6729 respectively, caused additional taxes to be assessed against both appellants. The sole issue on appeal is whether revisions of the sales fractions were authorized by statute under the circumstances presented.

Authority to revise the statutory apportionment figure calculation exists, under limited circumstances, and is derived exclusively from 72 P.S. § 7401(3)2(a)(18) (Supp.1983), which provides:

> *If the allocation and apportionment provisions of this definition do not fairly represent the extent of the taxpayer's business activity in this State,* the taxpayer may petition the Secretary of Revenue or the Secretary of Revenue may require, in respect to all or any part of the taxpayer's business activity:
>
> (A) Separate accounting;
>
> (B) The exclusion of any one or more of the factors;
>
> (C) The inclusion of one or more additional factors which fairly represent the taxpayer's business activity in this State; or
>
> (D) The *employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.*

(emphasis added.) Thus, modification of the statutory apportionment calculation is authorized, under provision (D), but *only* upon satisfaction of the precondition that the standard formulas be not fairly representative of the extent of the taxpayer's business activity in Pennsylvania. The Board's general practice [2], in determining whether that precondition is satisfied, is to ascertain, first, whether the sales

2. This practice was followed in the instant cases, and was subsequently adopted by regulation, 61 Pa.Code § 153.43.

fraction is disproportionate to the property or payroll fractions, and second, whether sales not included in the numerator of the sales fraction are destined to states where the taxpayer is not jurisdictionally subject to tax on income, and third, whether exclusion from the sales fraction denominator, via the "throw out" process, of all such untaxed sales would result in an increase in tax liability of ten percent or more. If all of these criteria are satisfied, the Board concludes, as it did with respect to the appellants, that the statutory apportionment formula does not fairly represent the taxpayer's business activities in Pennsylvania, and that the "throw out" rule should be applied to revise upwards the tax liability.

Application of the "throw out" rule has previously been considered, and approved, by this Court in *Hellertown Manufacturing Co. v. Commonwealth*, 480 Pa. 358, 390 A.2d 732 (1978). Appellants attempt to distinguish the instant cases from that of *Hellertown* where the taxpayer's property and payroll fractions were both 100%, while its sales fraction was just 1%, by contending that the taxpayer therein was involved in certain unusual inter-corporate transactions, as a wholly-owned subsidiary trading only with its parent company, that caused 99% of sales to ostensibly have been made outside of Pennsylvania while there were allegedly no activities conducted out-of-state to generate those sales. The question of whether the statutory formula for apportionment, under the facts present in *Hellertown*, inadequately reflected the taxpayer's business activities in this Commonwealth is not presently to be re-examined. We cannot, however, with any degree of intellectual credibility, distinguish the facts relied upon by this Court in that decision from those of the present case, where a contrary result is indicated. The allegedly distinguishing facts, regarding inter-corporate dealings and lack of actual out-of-state sales activities, now claimed by appellants to have been pivotal to the sustainment by this Court of application of the "throw out" rule in that case were in fact not relied upon, or even referred to, in our decision, though

they were set forth in the lower court's opinion in that case. See *Hellertown Manufacturing Co. v. Commonwealth*, 25 Pa.Commw. 90, 358 A.2d 424 (1976). Rather, our decision in *Hellertown* must fairly be read as according the statutory provision in question, allowing for modification of the apportionment formula when business activity in this Commonwealth is not thereby fairly reflected, a construction which *deems* as business activities in this state such activities as occur in other states that lack jurisdiction to impose taxes. Re-examination of the rationale underlying that construction, however, reveals a misplaced reliance upon concepts of jurisdiction to interpret a provision that is, in plain terms, clear in meaning and not jurisdictionally dependent. We are, therefore, compelled to overrule our decision in *Hellertown*.

The Tax Reform Code makes a taxpayer's subjection to at least one foreign tax jurisdiction a condition precedent to the use of apportionment. *Commonwealth v. Greenville Steel Car Co.*, 469 Pa. 444, 366 A.2d 569 (1976). As provided in 72 P.S. § 7401(3)2(a)(2) (Supp.1983), a "taxpayer having income from business activity which is *taxable both within and without this State* ... shall allocate and apportion his net income as provided...." (emphasis added). In determining whether a taxpayer is "taxable both within and without this State," the taxpayer is regarded as "taxable in another state if, in that state he is subject to a ... tax, or that state has *jurisdiction to subject the taxpayer to a net income tax regardless of whether, in fact, the state does or does not.*" 72 P.S. § 7401(3)2(a)(3) (Supp.1983) (emphasis added). Thus, although resort to the apportionment provisions is conditioned upon being subject to another state's tax jurisdiction, once qualification for apportionment is established then net income must be apportioned "as provided", 72 P.S. § 7401(3)2(a)(2) *supra.*, and the legislature has provided for apportionment to be governed by a statutory formula, except where that formula does not fairly reflect the extent of the taxpayer's business activities in Pennsylvania.

The express legislative intent that the apportionment provisions be utilized to tax "business activity *in this State*" (emphasis added), 72 P.S. § 7401(3)2(a)(18), *supra.*, is unequivocal, and application of the "throw out" rule so as to tax business activities *in other states* is plainly in derogation of that intent. We perceive no defect in the logic, or fairness, of a statutory scheme that results in income being apportioned to states not imposing a tax, provided the scheme assures, as does the present one, that tax burdens are borne so as to correlate with benefits derived from business activities in fact conducted in this Commonwealth. To *deem* as business activities in this Commonwealth such activities as occur elsewhere, simply because those activities are not elsewhere taxed, is to vitiate the apportionment provision designed to tax "business activity *in this State.*" (emphasis added.) It is to be emphasized, therefore, that whether other states in which a corporation does business choose or do not choose to levy an income tax on that corporation is irrelevant to a determination of the corporation's taxable income in Pennsylvania.

We reject the Commonwealth's assertion that mere disparity between the magnitudes of the property, payroll, and sales fractions is, in itself, indicative of a failure of the apportionment formula to fairly reflect the loci of business activities. Indeed, for the typical company, such activities are of varied types and may normally occur in widely differing concentrations in multiple states. In recognition of this, the legislature has provided a standard apportionment formula comprised of the foregoing three fractional components, each of which reflects a realm of business activity capable of having its primary locus in a different state. When, as applied to a given taxpayer, the fractional components do in fact widely vary, the apportionment formula will normally provide the measure of business activity contemplated by the legislature, absent circumstances subverting the representations provided by the fractional components.

In the instant cases, it is clear that appellants conduct most sales activities outside of Pennsylvania, including trade exhibitions, advertising, maintenance of sales forces, and consummation of sales. The Commonwealth has stipulated to the existence of these important out-of-state activities, and there appears no reason to conclude that the sales fraction components of appellants' apportionment calculations fail to fairly reflect the extent of such activities in this Commonwealth. Hence, there is no cause, within the meaning of the statutory precondition to adjustment of the apportionment formulas, 72 P.S. § 7401(3)2(a)(18), *supra.*, to employ another method, namely the "throw out" rule, to effectuate an equitable allocation of appellants' incomes.

Accordingly, the orders of the Commonwealth Court are vacated and the cases are remanded for the entry of judgments consistent with relief sought by the appellant taxpayers.

Orders vacated, and cases remanded.

ZAPPALA, J., files a dissenting opinion which NIX, C.J., and McDERMOTT, J., join.

ZAPPALA, Justice, dissenting.

I dissent from the opinion of the majority. Resettlement Orders of the Board of Finance and Revenue are proper under the Tax Reform Code, Act of March 4, 1971, P.L. 6, No. 2, Art. IV, § 401(3)2(a)(18), as amended, 72 P.S. § 7401(3)2(a)(18), which provides as follows:

If the allocation and apportionment provisions of this definition do not fairly represent the extent of the taxpayer's business activity in this State, the taxpayer may petition the Secretary of Revenue or the Secretary of Revenue may require, in respect to all or any part of the taxpayer's business activity:

(A) Separate accounting;

(B) The exclusion of any one or more of the factors;

(C) The inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this State; or

(D) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

This provision allows variation from the usual apportionment formula, as was done here.

The Board acted in accordance with what is known as the "throw out" rule, which implements the above-cited Tax Reform Code provision and is set forth at 61 Pa.Code § 153.43. The regulation provides for a case by case review to determine whether departure from the usual formula is required for equitable apportionment. It states that "an exclusion of sales from the sales factor may be effected in those cases where the statutory sales factor percentage is deemed by the Department (of Revenue) to be disproportionate to the property factor or payroll factor percentages or both and the excluded sales of tangible personal property delivered or supplied to a purchaser in a state or states wherein the taxpayer conducts no business activity which is taxable in such state or states.... (The rule is applied) by the exclusion from the denominator of the sales factor of those sales of tangible personal property delivered or supplied to a purchaser in a state:

(1) Wherein the taxpayer is not subject to a net income tax, a franchise tax measured by net income, a franchise tax for the purpose of doing business, or a corporate stock tax, or

(2) Which does not have jurisdiction to subject the property to a net income tax."

We approved of the "throw out" rule in *Hellertown Manufacturing Co. v. Commonwealth*, 480 Pa. 340, 390 A.2d 732 (1978). That case involved a corporation that conducted all of its manufacturing activities and had all of its personnel and tangible property, but less than one percent of its sales in Pennsylvania. It was not jurisdictionally subject to taxation in any other state except Ohio,

where it paid a fifty dollar a year franchise tax. The exclusion of sales in states where the taxpayer was not jurisdictionally subject to taxation resulted in a sales factor of 96%. The "throw out" rule as applied in *Hellertown* was consistent with the Tax Reform Code and took reasonable account of the fact that the taxpayer's operations were within the Commonwealth. I would reaffirm the validity of *Hellertown* and find it controlling in the instant case. The stipulated facts and the high apportionment factors for property and payroll as cited in the majority show that the bulk of Appellant's operations are within the Commonwealth. The sales factor is disproportionately low as not to fairly represent the concentration of activities here. This is the type of situation that the tax code covers in § 401(3)2(a)(18). It should be dealt with by means of the "throw out" rule.

I would affirm the Order of the Superior Court.

NIX, C.J., and McDERMOTT, J., join in this dissenting opinion.