### 512 A.2d 1332

Rockwell International Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Rockwell International Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued March 12, 1986, before President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, MACPHAIL, BARRY, COLINS and PALLADINO.

*Gregory W. Walkauskas,* for petitioner.

*Thomas D. Nabors, Jr.,* Deputy Attorney General, with him, *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE COLINS, July 23, 1986:

Rockwell International Corporation (Rockwell), a Delaware corporation licensed to do business in the state of Pennsylvania, with its principal office in Pittsburgh, Pennsylvania, appeals an adverse determination of the Board of Finance and Revenue (Board) sustaining resettlements of the property fractions of the apportionment factors of Rockwell's franchise tax returns for the fiscal year ending September 30, 1979. The resettlements had been entered by the Department of Revenue and approved by the Department of the Auditor General.

The methodology for calculating what portion of a corporation's transactions has a taxable nexus or situs in Pennsylvania is the same for both the Corporate Net Income Tax[1] and the Capital Stock/Franchise Tax.[2] Sec-

---

[1] Sections 401-402 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7401-7412.

[2] Sections 601-606 of the Tax Reform Code of 1971, 72 P.S. §§7601-7606. In the case of a domestic corporation, the tax is called a capital stock tax and is a property tax. A foreign corporation pays a franchise tax which is a business privilege tax. Since Rockwell is a foreign corporation, it pays a franchise tax. *See Commonwealth v. After Six, Inc.,* 489 Pa. 69, 413 A.2d 1017 (1980).

tion 401 of the Tax Reform Code of 1971 states that all business income shall be apportioned to Pennsylvania by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus the sales factor, and the denominator of which is three.[3] *See Paris Manufacturing Company, Inc. v. Commonwealth*, 505 Pa. 15, 476 A.2d 890 (1984). The apportionment is done in the same manner for capital stock and franchise taxes.[4]

Here, the parties have stipulated as to the facts and they dispute only the value of property to be included in the property fraction of the apportionment formula. The property fraction is calculated by means of a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented in Pennsylvania, and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented and used during the tax period subject to statutory exceptions for interests held as security only.[5]

Rockwell makes use of a facility in Winchester, Kentucky, the value of which Rockwell included in its property factor as if the facility were owned by Rockwell. Rockwell claims ownership of the facility subject to a financing arrangement interest held by the City of Winchester, to whom Rockwell makes annual payments. The Department of Revenue disputes the characterization of this arrangement. It contends that Rockwell does not own the property but rents it. The tax consequences of rental as opposed to ownership of property are set forth in Section 401 of the Tax Reform Code of 1971, which requires property owned by the taxpayer to be

---

[3] *See* note 1; 72 P.S. §§7401 (3) 2. (a) (9).

[4] *See* Section 602 (b) (1) of the Tax Reform Code of 1971, 72 P.S. §7602 (b) (1).

[5] *See* 72 P.S. §7401 (3) 2. (a) (10).

valued at original cost, whereas property rented is to be valued at eight times the net annual rental rate.[6] Pursuant to its theory that the property was rented and not owned, the Department of Revenue resettled Rockwell's property factor such that its overall franchise and corporate net incomes taxes were increased.

The arrangement regarding the Winchester facility was executed by means of a Contract of Lease and Rent and a Contract of Acquisition by Purchase, each simultaneously executed on September 6, 1966. Title passed to Winchester by virtue of the Acquisition Contract, but Rockwell maintained all operating and ownership rights pursuant to the lease. The agreements provided for the capital for the facility to be raised by means of tax-free municipal bonds, while Rockwell would make semi-annual payments of rent to be applied solely to interest, principal and sinking fund payments on the bonds. As of September 1, 1976, Rockwell had an option to reacquire title by paying an amount sufficient to retire the bonds plus the sum of One Dollar ($1.00). By September 1, 1991, the bonds are scheduled to be fully retired at the current rate of lease payments. Under the lease, Rockwell maintains the sole right to remove equipment, to buy insurance, to be liable for negligence, to pay salaries, and to assign and sublet the property. The City of Winchester has none of these rights normally incident to ownership. It may not sell or assign the property without Rockwell's permission.

The Internal Revenue Service (IRS) in August of 1966 informed the parties to the transaction that it would treat the transaction as a purchase by Rockwell of the Winchester facility subject to a security interest.[7]

---

[6] *See* 72 P.S. §7401 (3) 2. (a) (11).

[7] *See* letter of L. H. Schweickhardt of record. The letter states that:

> It is the view of the Internal Revenue Service that the substance of the entire transaction is a financing arrange-

Accordingly, Rockwell has on federal tax forms filed since 1966 claimed all of the applicable deductions and tax credits incident to ownership of the Winchester facility without IRS objection. However, under Pennsylvania law, the treatment accorded taxable property by the federal taxing authority is not necessarily imputed to the state taxing authority unless the tax enabling statute so expressly requires. *See Commonwealth v. Scott Paper Co.,* 425 Pa. 444, 228 A.2d 904 (1967). In this case, the tax enabling statute fails to define the distinction between ownership and rental of property. Our duty is to inquire whether, under Pennsylvania law, the property was owned by Rockwell or merely rented.

This is a question of interpretation of the contractual agreements between Rockwell and Winchester. Our review of the arrangement and of applicable Pennsylvania law leads us to agree with the federal view of such transactions, and we conclude that Rockwell owns the facility subject to a security interest held by the city to guarantee the servicing of the bonds. The question here is analogous to inquiring whether the intent of the parties was to execute a mortgage agreement or to execute a sale and lease back arrangement.

---

ment rather than a true 'sale and lease back.' The financing for the Project will be provided through Winchester, which will serve as an intervening mortgage during the term of the 'lease,' with title to the Project serving as security for the payment of the Bonds issued by Winchester. The Company will be the equitable owner of the Project during the entire term of the 'lease.'

In short, the IRS view was that the arrangement is akin to a mortgage where Rockwell is the equitable owner of the property and Winchester holds title merely to secure its lending interest *See Helvering v. Lazarus & Co.,* 308 U.S. 252 (1939); *Sun-Oil Co. v. Commissioner,* 562 F.2d 258 (3d. Cir. 1977), *cert. denied,* 436 U.S. 944 (1978).

In the case of *Hahnemann Medical College and Hospital of Philadelphia v. Commonwealth,* 52 Pa. Commonwealth Ct. 558, 416 A.2d 604 (1980), Judge ROGERS stated for our Court, sitting *en banc,* that "[a] mortgage is in essence a defeasible deed, requiring the grantee to reconvey the property held as security to the grantor upon satisfaction of the underlying debt or the fulfillment of established conditions." *Id.* at 564, 416 A.2d at 607. The appellant in that case sought relief from the provisions of the Realty Transfer Tax Act (Transfer Tax)[8] by claiming that its deed and lease back transaction to secure a governmental bond issue was in substance a mortgage, and thereby was exempt from taxation. Appellant argued that a deed to Hahnemann Hospital executed in favor of the Pennsylvania Higher Education Facilities Authority (PHEFA) was actually held as a security interest by PHEFA until certain revenue bonds floated by PHEFA could be repaid by Hahnemann. The deed was accompanied by a two-part standard lease agreement which provided for reconveyance of the property to Hahnemann upon repayment of the debt. Moreover, Hahnemann at all times remained in possession of the property and was responsible for its maintenance and operation.

In rejecting the Commonwealth's argument that the deed on its face was absolute and could not be converted into a mortgage, the Court stated:

A deed absolute on its face may be transformed into a mortgage by a defeasance which is in writing, signed and delivered by the grantee in the deed to the grantor. . . . The lease existing between Hahnemann and PHEFA providing, [sic],

---

[8] Act of December 27, 1951, P.L. 1742, *as amended, formerly* 72 P.S. §§3283-3292, repealed by the Act of May 5, 1981, P.L. 36. A similar provision is now found at 72 P.S. §§101-C—8112-C.

*inter alia,* for defeasance of the property in question upon repayment of monies, satisfies the Act of June 8, 1881, thus rendering the deed a mortgage.

*Id.* at 565, 416 A.2d at 607 (citations omitted). The Court, therefore, held the transaction exempt from the Transfer Tax as a mortgage, satisfying the Act's exemption requirement of a transaction where real property was transferred solely for the purpose of serving as security, and where no sale was intended. *Id.* at 565-67, 416 A.2d at 607-608.

The arrangements between Rockwell and Winchester are virtually indistinguishable from the arrangements between Hahnemann and PHEFA. The agreements between Rockwell and Winchester explicitly provided for an option to reacquire title to the property for One Dollar ($1.00) upon retirement of the bond debt. This is virtually indistinguishable from the defeasance provisions considered in the *Hahnemann* case. Rockwell at all times remained in possession of the property and was responsible for its maintenance and operation. Once the bonds are paid for, Rockwell can reacquire title for a mere peppercorn. These features of the agreements between Rockwell and Winchester are the very features relied upon by the *Hahnemann* court in considering a transaction to be a mortgage. Consequently, under Pennsylvania law, the agreements in substance constituted a mortgage agreement pursuant to which equitable title remained with Rockwell and legal title only passed to Winchester in order to secure a financing interest in the property.

From this, it logically follows that Rockwell has an ownership interest in the property under Pennsylvania law and is entitled to treat it as owned for purposes of calculating the property fractions of its apportionment factors in its franchise tax and corporate net income tax returns.

The decision of the Board of Finance and Revenue is reversed and judgment entered in the amounts stipulated for petitioners.

ORDER

AND NOW, this 23rd day of July, 1986, the orders of the Board of Finance and Revenue, Nos. R-6272 and R-6273, dated October 6, 1982, are reversed and awards are entered in favor of petitioners for One Thousand Two Hundred Thirty-Eight Dollars ($1,238.00) in 403 C.D. 1983 (R-6273-corporate net income tax), and Five Thousand Three Hundred Forty-Six Dollars and Eighty-Six Cents ($5,346.86) in 404 C.D. 1983 (R-6272-franchise tax), these dollar amounts having been stipulated to by the parties. Unless exceptions hereto are filed as provided by Pa. R.A.P. 1571 within thirty (30) days of the date of entry of this order, the prothonotary is directed to enter judgment for these amounts in the above-captioned matters.