626 A.2d 664

**SURGICAL LASER TECHNOLOGIES, INC., for itself and for all similarly situated corporations, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF REVENUE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 17, 1992.

Decided April 8, 1993.

Publication Ordered June 11, 1993.

50

Alfred W. Putnam, Jr., for petitioner.

Kevin A. Moury, for respondent.

Before DOYLE and FRIEDMAN, JJ., and LORD, Senior Judge.

FRIEDMAN, Judge.

Presently before this court are the preliminary objections of the Commonwealth of Pennsylvania, Department of Revenue (Revenue Department) to the petition for review (Petition) of Surgical Laser Technologies, Inc. (SLT), filed on February 19, 1992 in our original jurisdiction.

The Petition is in the nature of a complaint in equity, seeking declaratory and injunctive relief under The Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541. In the Petition, SLT alleges generally that section 16 of the Act of August 4, 1991, P.L. 97, No. 22 (Act 22), 72 P.S. § 7401(3)4.(a), adversely impacts upon SLT and other similarly situated corporations. Section 16 of Act 22 amends section 401(3)4.(a) of the Tax Reform Code of 1971 (Code),[1] by discontinuing Pennsylvania's corporate net operating loss carryforward provision for tax years beginning in 1991.

Prior to the enactment of Act 22, section 401(3)4.(a) of the Code stated:

1. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7101–10004.

For taxable years beginning in 1982 and thereafter, a net loss deduction shall be allowed from taxable income as arrived at under subclause 1 or, if applicable, subclause 2.

Following its amendment by Act 22, the relevant portion of Code section 401(3)4. provides:

4.(a) For taxable years beginning in 1982 through taxable years beginning in 1990, a net loss deduction shall be allowed from taxable income as arrived at under subclause 1 or, if applicable, subclause 2. For taxable years beginning in 1991 and thereafter, the net loss deduction allowed for years prior to 1991 shall be suspended, and no carryover of net losses from taxable years 1988, 1989 and 1990 shall be utilized in calculating net income.

In its Petition, SLT avers that it is a Delaware Corporation with headquarters in Pennsylvania, engaged in the development, manufacture and marketing of lasers and related laser accessories and equipment for surgery. In support of its request for declaratory judgment, SLT's Petition also contains the following relevant allegations, which we summarize as follows.

In 1981, the Pennsylvania General Assembly enacted Code section 401(3)4., 72 P.S. § 7401(3)4., which allowed companies to carry forward their net operating losses and deduct them from income earned in the three succeeding years for corporate net income tax purposes. This deduction was phased in over three years from 1981 to 1983. (Petition, ¶ 6). Pennsylvania designed the net operating loss carryforward provision to encourage investment and job creation in the state and to provide relief to businesses that experience cyclical downturns. (Petition, ¶ 7, with excerpts of legislative history attached as Exhibit "B").[2] To this end, Pennsylvania

2. The Revenue Department argues that paragraph 7 of SLT's Petition, explaining the General Assembly's purpose in implementing the net loss deduction, constitutes a conclusion of law rather than a factual assertion and therefore, need not be admitted for purposes of the preliminary objection. In addition, the Revenue Department contends that SLT's Exhibit "B", which includes evidence of legislative floor debates on the enactment of Code section 401(3)4., in support of paragraph 7's allegation, is not admissible for purposes of this preliminary objection

publicized the availability of the carryforward as an incentive to businesses to locate and/or invest in the Commonwealth. (Petition, ¶ 8, with advertisements attached as Exhibits "C–1" and "C–2"). SLT was aware of the net operating loss carryforward provision when, in 1988, it began to move portions of its business into Pennsylvania. SLT and other corporations, also aware of the provision, continued to make substantial investments and commitments in Pennsylvania during 1988, 1989, 1990, and early 1991, benefitting the Commonwealth. (Petition, ¶ 9).

In 1988, SLT had a Pennsylvania net operating loss of approximately $710,075.00, and had not yet experienced a

or, should the preliminary objection be denied, for the record to be established in the litigation of this action. *Martin Estate*, 365 Pa. 280, 74 A.2d 120 (1950); *Hellertown Manufacturing Co. v. Commonwealth*, 25 Pa.Commonwealth Ct. 90, 358 A.2d 424 (1976), *aff'd*, 480 Pa. 358, 390 A.2d 732 (1978), *overruled on other grounds, Paris Manufacturing Co. v. Commonwealth*, 505 Pa. 15, 476 A.2d 890 (1984).

However, we believe that this is too broad an interpretation of *Martin Estate* and *Hellertown*, which hold that when a statute's meaning is plain, we may not look to legislative reports to alter that meaning. *See Fisher v. Department of Public Welfare*, 509 Pa. 164, 501 A.2d 617 (1985), *cert. denied, Arabi v. Pennsylvania*, 479 U.S. 911, 107 S.Ct. 308, 93 L.Ed.2d 283 (1986). SLT does not contend that section 401(3)4. is ambiguous or question its meaning. Instead, SLT offers the floor debates for a different purpose, i.e., to show that the legislators were aware that they would influence the actions of corporate taxpayers by allowing a net operating loss carryforward deduction. *See Crawl v. Commonwealth*, 98 Pa.Commonwealth Ct. 431, 436 n. 7, 511 A.2d 924, 927 n. 7 (1986) ("While floor debate is not recognized as being authoritative as legislative history, [this issue] was obviously of great concern to the legislature at the time of consideration of [the statute]."). Moreover, we note that in *Commonwealth v. Budd Co.*, 379 Pa. 159, 108 A.2d 563 (1954), *appeal dismissed*, 349 U.S. 935, 75 S.Ct. 782, 99 L.Ed. 1264 (1955), the Court concluded that Pennsylvania allowed corporate net operating loss carryback and carryforward deductions in order to attract new business to the Commonwealth and retain those businesses already located there, inferring this purpose from the fact that the Commonwealth advertised this tax benefit all along the Atlantic seaboard. Here, too, SLT asserts that the Commonwealth widely advertised its enactment of the net operating loss carryforward provision in order to attract business to the state, examples of which are attached to the Petition as Exhibits "C–1" and "C–2." Therefore, even without the floor debate contained in Exhibit "B", we believe that the purpose behind the allowance of the net operating loss carryforward can be reasonably deduced from the facts presented.

profitable year. In 1989 and 1990, despite modest profits, SLT still was not liable for corporate net income tax because earnings for those years were offset by net losses carried forward from years prior to 1988. (Petition, ¶¶ 14 and 15). However, during the years when it operated at a loss, SLT anticipated that it would have the benefit of the net operating loss carryforward provision, so that once SLT became profitable, it could use its early losses to reduce its current taxable income over a three-year period. (Petition, ¶ 16).

On August 4, 1991, the Pennsylvania General Assembly enacted Act 22, which the Governor signed into law the same day. Among other things, Act 22 eliminated corporate taxpayers' ability to use net operating losses from prior years to offset income in years after 1990. (Petition, ¶ 10). Act 22 immediately suspended operation of the net operating loss carryforward provision, even covering those losses already incurred in 1988, 1989 and 1990. This was done even though the provision had originally been phased in so that losses could only be carried forward from years in which taxpayers had planned to be able to carry losses forward. Having tailored the carryforward provision to induce taxpayers' investments in Pennsylvania, the General Assembly defeated taxpayers' reasonable reliance on the tax benefit of 1988, 1989 and 1990 losses by eliminating the policy without providing for a similar phase out. (Petition, ¶¶ 12 and 13).

As a result of the discontinuance of the carryforward provision, SLT could not use its 1988 net operating loss to reduce its 1991 taxes. In fact, because the three year period expires after 1991, SLT will lose the tax benefit of its 1988 loss permanently. Although Act 22 will not alter SLT's tax liabilities for 1988, 1989 or 1990, SLT's 1991 corporate net income tax liability potentially could be increased by suspension of the net loss deduction provisions. In addition, if Act 22 remains in force through 1993, any losses experienced by corporations in 1989 and 1990 will be extinguished as tax benefits. (Petition, ¶¶ 18 and 19).

Thus, insofar as the repeal of the net operating loss carryforward provision deprives SLT of the use of Pennsylvania

corporate net operating losses from years prior to the year of repeal, it is arbitrary, irrational, and unfair. SLT is threatened with irreparable injury because the repeal of the net operating loss carryforward provision subjects it to taxes unconstitutionally levied upon it and also deprives it of favorable financial statement disclosure and opportunities to have made or to make proper plans for taxes in 1988 and later years. For this injury, SLT has no adequate remedy at law. (Petition, ¶¶ 20–22).

Thereafter, the Petition challenges the constitutionality of Act 22, stating two counts for relief. In Count I, SLT asserts that retroactive repeal of the Pennsylvania corporate net operating loss provision violates due process under Article I, § 1 of the Pennsylvania Constitution by: 1) depriving taxpayers of their vested interest in Pennsylvania net operating losses already accrued; 2) constituting retroactive taxation in contravention of Pennsylvania law; and 3) representing inequitable repudiation of a quasi-contract. (Petition, ¶ 24). In Count II, SLT alleges that Act 22 violates the uniformity clause of Article VIII, § 1 of the Pennsylvania Constitution by: 1) arbitrarily discriminating among corporations that incurred Pennsylvania net operating losses in 1988, treating those corporations that were able to use their 1988 losses against their 1989 or 1990 tax liability differently from those that would have used the 1988 losses against their 1991 tax liability; and 2) arbitrarily discriminating between corporations that would otherwise be able to use net operating losses from 1988, 1989 and 1990 and all other corporate taxpayers, placing an additional tax burden on the former subset of corporate taxpayers rather than distributing the increase over the entire class of corporate taxpayers. (Petition, ¶¶ 27 and 28).

Finally, the Petition requests this court to declare the relevant portions of Act 22, amending Code section 401(3)4. to effect an immediate repeal of the Pennsylvania corporate net operating loss carryforward provision, unconstitutional and prays that we enjoin its enforcement.

The Revenue Department filed a preliminary objection in the nature of a demurrer, asserting that the Petition should be dismissed because SLT did not plead facts sufficient to establish that Act 22 is unconstitutional with respect to SLT or any other corporation subject to corporate net income tax. Specifically, the Revenue Department argues that the facts alleged in SLT's Petition failed to demonstrate either a deprivation of SLT's property without due process of law, as claimed in Count I of the Petition, or an infringement of the uniformity clause, as claimed in Count II of the Petition.

 Initially, we note that when ruling on a preliminary objection in the nature of a demurrer, we must accept as true all well-pleaded material allegations in the petition for review as well as all inferences reasonably deduced therefrom. *Pennsylvania Chiropractic Federation v. Foster,* 136 Pa.Commonwealth Ct. 465, 583 A.2d 844 (1990). The court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. *Martin v. Commonwealth,* 124 Pa.Commonwealth Ct. 625, 556 A.2d 969 (1989). We will sustain a demurrer only when it appears with certainty that the law permits no recovery if the facts are as pleaded. *Pennsylvania Medical Providers Association v. Foster,* 136 Pa.Commonwealth Ct. 232, 582 A.2d 888 (1990). Any doubt should be resolved in favor of overruling the demurrer. *Gaster v. Township of Nether Providence,* 124 Pa.Commonwealth Ct. 595, 556 A.2d 947 (1989).

 In Count I of its Petition, SLT alleges that the disputed legislation violates its right to due process of law by constituting unpermitted retroactive taxation. However, the Revenue Department contends that Act 22 is not a retroactive law or, if retroactive, SLT's Petition establishes only a pre-existing condition, i.e., the 1988 tax loss, and not a vested right or quasi-contractual obligation which was repudiated by the Commonwealth.

With regard to retroactivity, we have held that legislation is retroactive when it "relates back to and gives a previous transaction a legal effect different from that which it had

under the law in effect when it transpired." *Bureau of Employment Security v. Pennsylvania Engineering Corp.*, 54 Pa.Commonwealth Ct. 376, 380, 421 A.2d 521, 523 (1980). SLT asserts that when it incurred losses in 1988, it also acquired a corresponding tax benefit under Pennsylvania law: the opportunity to offset income in one or more of the next three years. Because Act 22 had the legal effect of extinguishing this previously fixed tax benefit, SLT claims that Act 22 relates back to the 1988 net operating loss and gives it a legal effect different from that which it had under the law in effect when it transpired, satisfying the test for retroactivity in *Pennsylvania Engineering.*

The Revenue Department counters, arguing that the plain language of Act 22 demonstrates that the suspension of the net loss deduction is not a retroactive law in that the statutory amendment, which became effective in August of 1991, applies only to corporate net income tax liabilities arising in taxable years beginning in 1991 and will not impact on taxes owed on returns filed prior to that year. In support of its position, the Revenue Department also relies on *Pennsylvania Engineering.*

*Pennsylvania Engineering* involved enactment of a statute which required employers who made deductions from a back wage award because of claimant's receipt of unemployment benefits, to pay an amount equal to the deduction into the Unemployment Compensation Fund. Prior to the effective date of this legislation, the defendant employer laid off twenty-two of its employees, who were granted and received unemployment benefits. Subsequently, an arbitrator awarded back pay to these twenty-two employees. The employer paid the back wages to three of the employees prior to the effective date of the legislation, deducting the sum representing unemployment benefits. The employer paid the remaining nineteen employees after the statute took effect, but withheld the amount each of the employees received in unemployment benefits from their back pay award without paying an equivalent amount into the Unemployment Compensation Fund. The employer claimed that where both the employees' unem-

ployment compensation and back pay were awarded prior to the effective date of the new legislation, requiring matching payment into the Fund would give the statute a retroactive effect.

We disagreed with respect to the nineteen deductions that the employer made after the effective date of the statute, reasoning that under the clear language of the statute, no legal liability was triggered until the employer actually made the deduction from the back pay award.[3] We stated that although the awards were made prior to the statute's effective date, "our Supreme Court has held that a statute does not operate retroactively merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment." Id. at 380–81, 421 A.2d at 524 (citation omitted).

Based on this reasoning, the Revenue Department contends that Act 22 is not retroactive. The Revenue Department argues that the transaction that triggers the legal liability here is SLT's receipt of income in 1991, which was not complete until after the effective date of Act 22. Indeed, the Revenue Department notes that no tax liability arises unless SLT experiences income rather than a loss for the year. Consequently, the Revenue Department alleges that Act 22 reflects only a prospective change in the tax laws.

■ On the other hand, SLT compares its situation to that of the taxpayers in Commonwealth v. Budd Co., 379 Pa. 159, 108 A.2d 563 (1954), appeal dismissed, 349 U.S. 935, 75 S.Ct. 782, 99 L.Ed. 1264 (1955). In Budd, our Supreme Court considered a statute enacted in 1947, repealing prior legislation. The Court determined that the new act violated due process by prohibiting the deduction of corporate net operat-

3. The statute in question in Pennsylvania Engineering provided that "[a]ny employer who makes a deduction from a back wage award to a claimant because of the claimant's receipt of unemployment compensation benefits, ... shall be liable to pay into the Unemployment Compensation Fund an amount equal to the amount of such deduction." Section 704 of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, as amended, added by Section 8 of the Act of July 6, 1977, P.L. 41, 43 P.S. § 864.

ing loss carrybacks suffered in 1946 to reduce 1944 taxes, a tax benefit which the superseded act had allowed. The Court, in *Budd*, recognized the retroactive effect of the new law and, although conceding that a retroactive tax is not unconstitutional per se, held "that a tax may not be retroactively applied beyond the year of the general legislative session *immediately preceding that of its enactment*; to provide otherwise constitutes a denial of due process." *Id.* at 170–71, 108 A.2d at 569 (emphasis in original). SLT admits that Act 22 will not change the amount of taxes owed on tax returns filed prior to 1991; however, SLT contends that Act 22 nevertheless has a unpermitted retroactive effect because it changes tax law with respect to losses realized more than a year before the enactment of Act 22. In fact, SLT asserts that Act 22 is substantially more retroactive that the statute in *Budd*. SLT contends that, unlike the taxpayer in *Budd*, who could not have known in 1944 whether it would sustain a loss in 1946 or how large that loss would be, the exact amount of SLT's tax benefit was established in 1988, along with the expectation that it could be used to reduce taxable income for the next three years.[4]

However, in the alternative, the Revenue Department argues that even if Act 22 is a retroactive law, the preliminary objection should still be sustained because the facts pleaded do

---

**4.** The Revenue Department attempts to distinguish *Budd* from the present case by pointing out that whereas *Budd* involved the repeal of a net loss carryback, Act 22 involves the suspension of a net loss carryforward. However, it is apparent that although the term "suspension" is used, Act 22 has the same effect as a repeal of prior tax expectations. Additionally, we would draw a distinction of our own and point out that the statute in *Pennsylvania Engineering*, unlike Act 22, does not amend existing law but represents entirely new legislation. Thus, it contains clear language regarding the "triggering" of liability, whereas Act 22 is concerned with the elimination of prior benefits. In the absence of clear language to the contrary, statutes must be construed to operate prospectively only. *Pennsylvania Engineering*.

SLT also challenges the Revenue Department's assertion that a net operating loss carryforward has no value until it is used, noting that in the business world, such tax benefits are routinely recognized as corporate assets from the year that they arise. *See In re Prudential Lines, Inc.*, 928 F.2d 565 (2nd Cir.1991), *cert. denied, PSS S.S. Co., Inc. v. Official Committee of Unsecured Creditors*, —— U.S. ——, 112 S.Ct. 82, 116 L.Ed.2d 55 (1991).

not establish that SLT has been deprived of a vested right nor that the legislature has abrogated a quasi-contractual obligation. "Where no vested right or contractual obligation is involved, an act or a regulation is not impermissibly construed retroactively when applied to a condition existing on its effective date, even though the condition results from events which occurred prior to that date." *R & P Services, Inc. v. Pennsylvania Department of Revenue,* 116 Pa.Commonwealth Ct. 230, 235, 541 A.2d 432, 434 (1988). The Revenue Department contends that because a taxpayer has no vested right in a tax deduction such as the net loss carryforward provision, the legislature could repeal the benefit without any constitutional violation.

The Revenue Department distinguishes the grant of this type of tax benefit from others in which the Commonwealth received a quid pro quo. In *City of Erie v. Griswold,* 5 Pa.Superior Ct. 132 (1897), *aff'd per curiam,* 184 Pa. 435, 39 A. 231 (1898), an 1880 city ordinance gave property owners who paved their property at their own expense a tax abatement equal to 5% of the cost of paving for a term of 10 years. In 1895, the city abolished the abatement, and the court held that the 1895 ordinance could not be applied to those property owners who had paved their property before its enactment; rather, these taxpayers were entitled to the full 10-year abatement. The court determined that the subsequent ordinance could not affect the vested rights of taxpayers under the original ordinance, which was in the nature of a contract between the city and those property owners who incurred the paving expense in reliance upon the 1880 ordinance.

Reasoning that in the present controversy, taxpayers are not required to do anything in order to qualify for the net loss deduction other than to lose money, the Revenue Department characterizes the carryforward provision as a unilateral tax benefit granted at the discretion of the legislature; thus, the Revenue Department contends that this benefit also could be withdrawn at the will of the legislature, and that a taxpayer cannot claim a justifiable reliance on its continued availability.

*Rector of Christ Church v. County of Philadelphia*, 65 U.S. (24 HOW.) 300, 16 L.Ed. 602 (1861).

■ SLT concedes that there is nothing per se invalid about a retroactive tax; however, SLT argues that retroactive application of new legislation offends due process if, balancing the interests of both parties, its application would be unreasonable. *Krenzelak v. Krenzelak*, 503 Pa. 373, 469 A.2d 987 (1983). When balancing the government's interest in collecting revenue against the taxpayer's competing interest in not having different tax rules apply to a completed transaction, the test is whether the taxpayer has had its expectations regarding taxation unreasonably disappointed by the retroactive imposition of a burden it could not reasonably have been expected to anticipate. *Temple University v. United States*, 769 F.2d 126 (3d Cir.1985), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2914, 91 L.Ed.2d 544 (1986).

While admitting that the General Assembly created the net loss deduction, SLT contends that this fact does not, by itself, mean that the General Assembly may therefore suspend any Code provisions without considering the consequences of its actions. On the contrary, SLT asserts that a taxpayer can and should be able to rely on the continued availability of a carryforward where the losses have already been realized. SLT argues that the Revenue Department mischaracterizes the net loss deduction as a unilateral tax benefit and asserts that there was a quid pro quo here, similar to the one in *City of Erie*, creating a quasi-contract between the Commonwealth and the taxpayers. In order to qualify for the net operating loss carryforward provision, a corporate taxpayer had to invest in Pennsylvania or maintain its investment there, notwithstanding the fact that it sustained a loss in doing so. Although SLT concedes that the Commonwealth was not required to enact a net operating loss provision, SLT argues that once Pennsylvania influenced a corporate taxpayer's behavior by enacting the provision, due process requires that the

taxpayers be allowed to utilize those losses already accrued.[5]

Because the allegations set forth in the Petition, which we are constrained to accept as true, could establish a due process violation, we overrule the preliminary objection in the nature of a demurrer to Count I.

As to Count II of its Petition, SLT alleges that the Pennsylvania Legislature violated the uniformity clause of the Pennsylvania Constitution, found in Article VIII Section 1. That section mandates that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. The Revenue Department argues that section 16 of Act 22 does not violate the uniformity clause because it applies equally to all corporate taxpayers subject to corporate net income tax and becomes effective for all corporate taxpayers at the same time, beginning with the taxable year 1991 and thereafter.

On the contrary, SLT argues that Act 22 affects some taxpayers subject to corporate net income tax and has no effect on other taxpayers subject to the same tax. SLT asserts that Act 22 discriminates between corporations with

5. Although the Court in *Budd*, did not base its conclusion that the statute's retroactive effect violated due process on the taxpayer's reliance, the Court did state that to hold otherwise would constitute an obvious breach of faith by the Commonwealth. The Court noted that in light of public statements, advertising availability of the tax benefits since abolished, it would be unjust and unfair to those taxpayers who properly relied on Commonwealth representations.

SLT asserts that, as in *Budd*, the retroactive repeal will substantially and adversely affect particular Pennsylvania businesses which relied on the accrued tax benefits. For example, start-up companies which generally incur initial losses in establishing their businesses are denied the benefits of those losses once they have become profitable. Cyclical industries, which alternate years of high profitability with loss years, can no longer average their profit and loss years to reflect true income. In addition, S corporations will be adversely affected by the immediate repeal of the tax benefit. Pennsylvania S corporations must elect their tax status by March 15 of the year in question to receive S corporation treatment under Pennsylvania tax law. Therefore, many S corporations chose to pay their 1991 taxes at the regular corporate rate of 12.25 percent to take advantage of accrued net operating losses. Had they known they would not have been entitled to this tax benefit, they would have paid taxes for 1991 at the personal income tax rate of only 2.6 percent.

losses in 1988, 1989 and 1990 and all other taxpayers, increasing the tax burden only on the former subset of corporate taxpayers while leaving the tax rate unchanged on those taxpayers with net operating gains. Although classification of taxpayers is permissible, uniformity requires that the criteria used to make the classification be rational. *Aldine Apartments v. Commonwealth,* 493 Pa. 480, 426 A.2d 1118 (1981). SLT contends that rather than distributing the tax increase over the entire class of taxpayers, Act 22 irrationally places an increased tax burden on those least able to bear it, and so violates uniformity.

In addition, SLT's complaint asserts that even within the subset of corporations suffering net operating losses in 1988, taxpayers were not treated uniformly under Act 22, depending on when those corporations exercised their 1988 tax benefit. Whereas some have been deprived of the opportunity to utilize the tax benefit accrued in 1988 against their 1991 taxes, other corporations were able to take advantage of this benefit by using them to offset their 1989 or 1990 tax liability.

We note that at the procedural stage of a demurrer, SLT is under no burden to prove its cause of action. *Marinari v. Department of Environmental Resources,* 129 Pa.Commonwealth Ct. 569, 566 A.2d 385 (1989). We must determine only whether the facts in the Petition are sufficient to entitle it to relief. *Id.* Whether such non-uniformity has been statutorily created by enactment of Act 22 is clearly an issue which, if proven, would allow SLT the relief requested in its Petition. Thus, because we cannot conclude with certainty that the law would bar recovery if the facts are as pleaded, we must overrule the Revenue Department's preliminary objection in the nature of a demurrer to Count II of SLT's Petition.

Accordingly, we dismiss the preliminary objections and direct the Revenue Department to file an answer to SLT's Petition.

## ORDER

AND NOW, this 8th day of April, 1993, the preliminary objections of the Commonwealth of Pennsylvania, Department

64

of Revenue are dismissed and it is directed to plead to the Petition for Review within thirty (30) days from the date of this order.

DOYLE, J., dissents.